# EXHIBIT A

# CIV-130912-SMC-VS1300943-MISC-145902



## Scanned Document Coversheet

System Code:   CIV
Case Number:   VS1300943
Case Type:     SMC
Action Code:   MISC
Action Date:   09/12/13
Action Time:    2:59
Action Seq:    0002
Printed by:    TWARN

> THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

## PREFILING ORDER - VEXATIOUS LITIGANT AS TO ANTHONY OLIVER AKA ANTHONY ALLEN OLIVER filed.



NEW FILE

SCANNED

MC-700

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and Address):*<br>*(To be completed only if a party is making the motion)*<br><br>ATTORNEY FOR *(Name):*<br>TELEPHONE NO.:<br>FAX NO.:<br>E-MAIL ADDRESS: | FOR COURT USE ONLY<br><br>**F I L E D**<br>SUPERIOR COURT<br>COUNTY OF SAN BERNARDINO<br><br>SEP 1 2 2013<br><br>BY _____ DEPUTY |

COURT OF APPEAL,     **APPELLATE DISTRICT, DIVISION**

[✓] SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 303 W Third Street
MAILING ADDRESS: 4th Floor
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: Court Executive Office

CASE NAME: OLIVER VS. PROGRESSIVE FINANCIAL/BRIGHTHOUSE NETWORKS

| **PREFILING ORDER—VEXATIOUS LITIGANT** | CASE NUMBER:<br>SMCVS1300943 |

1. Name and address of each plaintiff or cross-complainant or other party subject to this prefiling order:
   ANTHONY OLIVER ALSO KNOWN AS ANTHONY ALLEN OLIVER
   16366 ALVISO AVENUE
   VICTORVILLE, CA 92394

2. This prefiling order is entered pursuant to a motion made by [✓] the court [ ] party (name):

3. The person or persons identified in item 1, unless represented by an attorney, are prohibited from filing any new litigation in the courts of California without approval of the presiding justice or presiding judge of the court in which the action is to be filed.

4. The clerk is ordered to provide a copy of this order to the California Judicial Council by fax at 415-865-4329 or by mail at the address below.

| Vexatious Litigant Prefiling Orders<br>California Judicial Council<br>Administrative Office of the Courts<br>455 Golden Gate Avenue<br>San Francisco, California 94102 | Date: 12 Sept 13<br><br>_____<br>JUDICIAL OFFICER |

Form Adopted for
Mandatory Use
Judicial Council of California
MC-700 [Rev. January 1, 2013]

**PREFILING ORDER—VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN BERNARDINO
## SAN BERNARDINO DISTRICT

**TITLE OF CASE (ABBREVIATED):**

**OLIVER vs. PROGRESSIVE FINANCIAL/BRIGHT HOUSE NETWORKS**

**CASE NUMBER(s):**          **SMCVS 1300943**

### DECLARATION OF SERVICE BY MAIL

My business address is: 303 West Third Street, Fourth Floor, San Bernardino, California 92415-0302.

I hereby declare that I am a citizen of the United States, over the age of 18, employed in the above-named county, and not a party to nor interested in this proceeding.   On  October 26, 2012 , I deposited in the United States mail at San Bernardino, California, a sealed envelope (postage prepaid) which contained a true copy of the attached:

**NAME OF DOCUMENT:   PREFILING ORDER – VEXATIOUS LITIGANT**

At the time of mailing this notice there was regular communication between the place of mailing and the place(s) to which this notice was addressed.

**NAMES OF PERSONS SERVED**

Anthony Oliver
16366 Alviso Avenue
Victorville, CA  92394

Progressive Financial Services
2710 Gateway Oaks Drive, Suite 150
Sacramento, CA  95833

I declare under penalty of perjury the foregoing to be true and correct.

DATED:   ___September 13, 2013___          by _____
                                                                              KAY LEWIS
                                                                    Court Executive Assistant

# EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT

SEPT 26, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY:     BH     DEPUTY

Anthony Oliver,

           Plaintiff,

           v.

Jamie Michelle Luner et al.,

           Defendant.

2:18-cv-02562 VAP (AFMx)

**Order Declaring Plaintiff
To Be a Vexatious Litigant
(Doc. No. 93).**

On August 7, 2018, the Court ordered Plaintiff Anthony Oliver ("Plaintiff") to show cause in writing why he should not be declared a vexatious litigant and subjected to a requirement that he obtain leave of court before filing any additional lawsuits from the facts alleged in the proceedings of this case.  (Doc. No. 93).  Plaintiff filed a response on August 20, 2018.  (Doc. No. 95).  On August 24, 2018, Defendant Jamie Luner ("Defendant") also filed a response, (Doc. No. 97), and a Request for Judicial Notice in Support of Response to OSC, (Doc. No. 98).

After considering all papers filed by the parties, as well as the evidence described below, the Court rules as follows.

**I. BACKGROUND**

The Court's Order to Show Cause arises in the wake of Plaintiff's lawsuit alleging sexual battery, intentional infliction of emotional distress,

United States District Court
Central District of California

Case 2:18-cv-04140-RS Document 32-1 Filed 12/18/19 Page 7 of 70

United States District Court
Central District of California

1   and negligent infliction of emotional distress, filed March 29, 2018.  (Doc.

2   No. 1 at 10-14).  The Court granted Defendant's Motion to Dismiss on

3   August 3, 2018.  (Doc. No. 88).  Due to Mr. Oliver's abuse of Defendant and

4   Defendant's counsel throughout this litigation, as well as Mr. Oliver's history

5   of filing baseless lawsuits in federal and state court, the Court issued the

6   Order to Show Cause on August 7, 2018.  (Doc. No. 93).

7

8                **II.    LEGAL STANDARD**

9         A district court has the authority to enjoin "litigants with abusive and

10   lengthy histories" under the All Writs Act, 28 U.S.C. §1651(a).  *De Long v.*

11   *Hennessy*, 912 F.2d 1144, 1147 (9th Cir. 1990) (citations omitted); *Molski v.*

12   *Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  Among the

13   restrictions that may be imposed on a litigant found to be vexatious is a

14   requirement that the litigant obtain the approval of a judge before being

15   allowed to file an action.  *See* Central District Local Rule ("L.R.") 83-8.2

16   (providing for such an order); *De Long*, 912 F.2d at 1147; *Molski*, 500 F.3d at

17   1057 (recognizing district court's "inherent power to enter pre-filing orders

18   against vexatious litigants").

19

20         A pre-filing order is "an extreme remedy that should rarely be used."

21   *Molski*, 500 F.3d at 1057.  Its entry must be preceded by: (1) notice and an

22   opportunity to be heard, (2) the compilation of an adequate record for

23   review, and (3) substantive findings concerning the "frivolous or harassing

24   nature" of the plaintiff's litigation.  *Id.*  The pre-filing order also "must be

25   narrowly tailored to closely fit the specific vice encountered."  *Id.* (quoting *De*

26   *Long*, 912 F.2d at 1148).  In other words, "[c]ourts should not enter pre-filing

Case 2:18-cv-02862-VAP-AFM  Document 31  Filed 09/26/18  Page 3 of 70  Page ID

orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts."  *Id.*

The Ninth Circuit has recognized, however, that "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants."  *De Long*, 912 F.2d at 1148.  As set forth below, the Court determines that Plaintiff's actions require the entry of a narrowly tailored pre-filing order against them.

### III.    DISCUSSION

#### A.    Notice and an Opportunity to be Heard

Plaintiff has been given notice and an opportunity to be heard.  The Order to Show Cause was served on the Plaintiff, who has filed a response. This is sufficient to satisfy the notice requirement.  *See Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding that "an opportunity to be heard does not require an oral or evidentiary hearing on the issue").

#### B.    Compilation of Adequate Record for Review

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed."  *De Long*, 912 F.2d at 1147.  To be sufficient for entry of a pre-filing order, the record needs to show that the litigant's conduct was numerous or abusive in some manner.  *Id.*

United States District Court
Central District of California

United States District Court
Central District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Here, Court has an abundant record for review, including Plaintiff's history of filing scores of lawsuits filed in state and federal court, and his being declared a vexatious litigant by the state of California.

### 1. Plaintiff has been declared a vexatious litigant in the State of California

Plaintiff was declared to be a vexatious litigant in the State of California in 2013, capping a three-year period in which he filed 42 cases in state court. (Doc. No. 25-1 at 13). As of September 4, his name continues to appear on the "Vexatious Litigant List" maintained by the Judicial Branch of California. Judicial Branch of California, Vexatious Litigant List (Sept. 2018), www.courts.ca.gov/documents/vexlit.pdf. The Court may take judicial notice of this list. *Rupert v. Bond*, 2013 WL 5289617, at *5 (N.D. Cal. Sept. 18, 2013) (granting request for judicial notice of vexatious litigant list because it is "'capable of accurate and ready determination,' as it was prepared by the Administrative Office of the California courts") (citing Fed. R. Evid. 201(b)).

### 2. Plaintiff has filed dozens of lawsuits in federal court with no verdicts in his favor

In addition to his numerous actions in state court, Plaintiff has filed at least thirty lawsuits in federal court. The Court may take judicial notice of these state and federal court filings. *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

While two of Plaintiff's federal lawsuits resulted in undisclosed settlements, *see Anthony Oliver v. Daniel J. Teola et al.*, No. 18-cv-01461

United States District Court
Central District of California

PA (SKx) (C.D. Cal.); *Oliver v. T-Mobile, Inc., et al.*, No. 11-cv-05518 ODW (MRWx) (C.D. Cal.), sixteen were dismissed by courts on various grounds, including lack of standing, failure to state a claim, failure to comply with the court's orders, failure to pay filing fees, failure to file an amended *in forma pauperis* application, failure to serve process, or because the court found the action to be frivolous or malicious.  *See Oliver v. Hayley Sheth Investments, L.L.C. et al.*, No. 17-cv-00152 WTM (S.D. Ga.); *Oliver v. County of Chatham et al.*, No. 17-cv-00101 WTM (S.D. Ga.); *Oliver v. CMRE Financial Services, Inc., et al.*, No. 15-cv-08174 RGK (RAOx) (C.D. Cal.); *Oliver v. County of Los Angeles, et al.*, No. 15-cv-07791 SJO (KKx) (C.D. Cal.); *Oliver v. City of Oceanside, et al.*, No. 14-cv-00614 UA (AGRx) (C.D. Cal.); *Oliver v. City of Oceanside, et al.*, No. 14-cv-00403 BAS (S.D. Cal.); *Oliver v. City of Oceanside, et al.*, No. 13-cv-02246 LAB (S.D. Cal.); *Oliver v. Cal. Department of Corrections, et al.*, No. 13-cv-02225 SJO (KKx) (C.D. Cal.); *Oliver v. Grant & Weber, et al.*, No. 13-cv-01088 JFW (OPx) (C.D. Cal.); *Oliver v. Asset Acceptance, LLC, et al.*, No. 13-cv-00739 RGK (OPx) (C.D. Cal.); *Oliver v. California Department of Corrections, et al.*, No. 12-cv-06227 UA (AGRx) (C.D. Cal.); *Oliver v. Southcoast Medical Group, LLC, et al.*, No. 11-cv-00115 BAE (S.D. Ga.); *Oliver v. County of Isanti, et al.*, No. 10-cv-04218 ADM (D. Minn.); *Oliver v. Donald Sloane, et al.*, No. 10-cv-00169 JMR (D. Ariz.); *Oliver v. Reays Ranch Investors, et al.*, No. 10-cv-00158 JMR (D. Ariz.); *Oliver v. Gore, et al.*, No. 09-cv-02505 BEN (S.D. Cal.).

Plaintiff has also dismissed thirteen cases voluntarily or by joint stipulation.  *See Oliver v. Scram of California, Inc. et al.*, No. 17-cv-04735

CAS (PLAx) (C.D. Cal.); *Oliver v. All-Pro Bail Bonds, Inc. et al.*, No. 17-cv-01294 AJB (S.D. Cal.); *Oliver et al. v. Scram of California, Inc. et al.*, No. 17-cv-00237 SVW (AJWx) (C.D. Cal.); *Oliver v. Scram of California, Inc. et al.*, No. 16-cv-01193 LAB (S.D. Cal.); *Oliver v. Hertz Corporation, et. al.*, No. 16-cv-00291 JR (D. Ariz.); *Oliver v. California Highway Patrol, et al.*, No. 16-cv-00540 WQH (S.D. Cal.); *Oliver v. County of Los Angeles, et al.*, No. 15-cv-03995 SJO (KKx) (C.D. Cal.); *Oliver v. Centurylink Public Communications, Inc.*, No. 15-cv-01820 JGB (KKx) (C.D. Cal.); *Oliver v. Credit Management, LP, et al.*, No. 13-cv-01053 DMG (DTBx) (C.D. Cal.); *Oliver v. I.Q. Data International, Inc., et al.*, No. 12-cv-04511 CAS (FFmx) (C.D. Cal.); *Oliver v. T-Mobile, Inc.*, No. 12-cv-03804 JAK (FMOx) (C.D. Cal.); *Oliver v. Providence Health and Services Foundation et al.*, No. 12-cv-01082 JLS (JPRx) (C.D. Cal.); *Oliver v. City of Tucson, et al.*, No. 11-cv-00034 DCB (D. Ariz.).

## C. Substantive Findings of Frivolousness

Before issuing a pre-filing injunction against a pro se plaintiff, a district court must make "substantive findings as to the frivolous or harassing nature of the litigant's actions." *De Long*, 912 F.2d at 1148 (citing *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)). "An alternative to the finding of frivolousness is the finding that [Plaintiff's] claims show a pattern of harassment." *Id.*

A district court must look at the number and content of a party's filings when examining the frivolousness of the claims asserted. *Id.* A showing of litigiousness alone is insufficient to support an injunction, however. Rather,

"[t]he plaintiff's claims must not only be numerous, but also be patently without merit."  *Molski*, 500 F.3d at 1059 (quoting *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990)).  A district court also should "discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court."  *Powell*, 851 F.2d at 431.  Under the Local Rules of the Central District, any pre-filing order must be "based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken."  L.R. 83-8.3.

The Court has searched in vain for a case in federal court resulting in a verdict on the merits in Plaintiff's favor.  Instead, Plaintiff's record reveals that courts have repeatedly chastised Plaintiff for his conduct.  *E.g. Oliver v. County of Chatham et al.*, No. 17-cv-00101 WTM (S.D. Ga.) Doc. No. 189 at 1 (upbraiding Plaintiff for his "propensity to file flurries of motions, notices, and variously captioned documents with the Court, and his inclination to make serious allegations of misconduct against opposing counsel"); *Oliver v. Scram of California, Inc. et al.*, No. 16-cv-01193 LAB (S.D. Cal.) Doc No. 22 at 1-2 (reprimanding Plaintiff for "holding himself out to be a lawyer," as Plaintiff had brought the lawsuit as a class action and was attempting to represent class members).

Courts in this District have found that "that Plaintiff's conduct reveals a pattern of abusive litigation that must be addressed."  *Oliver v. CMRE Financial Services, Inc., et al.*, No. 15-cv-08174 RGK (C.D. Cal.) Doc. No. 28 at 8.  A recent vexatious litigant motion against Plaintiff was denied in

part because it was "one of the first instances where a federal court in the Central District of California has had occasion to caution Plaintiff concerning his abusive litigation practices," but the court warned Plaintiff that "future frivolous filings such as these may result in a pre-filing order." *Oliver v. County of Los Angeles, et al.*, No. 15-cv-07791 SJO (C.D. Cal.), Doc. No. 110 at 13.

Plaintiff has been warned about his practices on multiple occasions by multiple judges in multiple districts, but has failed to guide himself accordingly. The Court thus finds that Plaintiff has "abused the Court's process and is likely to continue such abuse, unless protective measures are taken." L.R. 83-8.3.

### D. Pre-Filing Order

Pre-filing orders "must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski*, 500 F.3d at 1061. While an order preventing a litigant from filing any suit in a district court is overbroad (*see De Long*, 912 F.2d at 1148), the Ninth Circuit has held that an order requiring a party's claims to be subjected to a screening by a district judge does not bar access to the courts, and can provide "a valuable layer of protection." *Molski*, 500 F.3d at 1061.

Mr. Oliver's abusive litigation practices have not been limited to a specific statute, and do not stem from similar alleged circumstances. Since 2012, Plaintiff has filed nearly twenty lawsuits in the Central District of California, with claims ranging from breach of contract to false advertising,

from violation of the Fair Debt Collection Practices Act to negligent infliction of emotional distress, from civil conspiracy to sexual battery. *See Anthony Oliver v. Jamie Michelle Luner,* No. 18-cv-02562 VAP (AFMx) (C.D. Cal.); *Anthony Oliver v. Daniel J. Teola et al.*, No. 18-cv-01461 PA (SKx) (C.D. Cal.); *Oliver v. Scram of California, Inc. et al.,* No. 17-cv-04735 CAS (PLAx) (C.D. Cal.); *Oliver v. Grant & Weber, et al.*, No. 13-cv-01088 JFW (OPx) (C.D. Cal.); *Oliver v. I.Q. Data International, Inc., et al.*, No. 12-cv-04511 CAS (FFmx) (C.D. Cal.); *Oliver v. T-Mobile, Inc., et al.*, No. 11-cv-05518 ODW (MRWx) (C.D. Cal.).

The Court thus finds that entry of a pre-filing order against Plaintiff in this district is appropriate. Accordingly, Plaintiff must obtain leave of court before filing any additional lawsuits in the Central District of California. Plaintiff must submit a copy of this order and a copy of the proposed filing with every motion for leave. If the Court does not grant Plaintiff written permission to file an additional action within thirty days of the date of the filing of the motion for leave, permission will be deemed denied.

# III. CONCLUSION

For the reasons stated above, the Court DECLARES Plaintiff Anthony Oliver to be a vexatious litigant, subject to the pre-filing order outlined above.

**IT IS SO ORDERED.**

Dated:    9/26/18

Virginia A. Phillips
Chief United States District Judge

# EXHIBIT C

Oliver v. County of Chatham, Not Reported in Fed. Supp. (2018)

2018 WL 1573560

2018 WL 1573560
Only the Westlaw citation is currently available.
United States District Court,
S.D. Georgia, Savannah Division.

Anthony OLIVER, Plaintiff,
v.
COUNTY OF CHATHAM, et al., Defendants.

CV417-101
|
Signed 03/30/2018

**Attorneys and Law Firms**

Craig S. Bonnell, Craig S. Bonnell, Attorney & Counselor at Law, Rincon, GA, for Plaintiff.

Anthony Oliver, Savannah, GA, pro se.

Jennifer R. Burns, Chatham County Attorney's Office, R. Jonathan Hart, Hart & Associates Law Firm, LLC, Bradford Collins Patrick, U.S. Attorney's Office, Benjamin Mason Perkins, Patrick T. O'Connor, Oliver Maner, LLP, Savannah, GA, for Defendants.

**REPORT AND RECOMMENDATION**

BRIAN K. EPPS, UNITED STATES MAGISTRATE JUDGE

*1 Plaintiff Anthony Oliver has filed an "Emergency" motion for a temporary restraining order as well as "immediate ex parte and ... oral argument hearing." Doc. 173. He seeks an injunction directing "defendants, their counsel and their co-[d]efendants from ongoing illegal activities, civil rights violations, and threats of detention and arrest." Doc. 173 at 8. He also requests that the Court direct the United States Marshall to effect service on the various defendants. Doc. 173 at 10; doc. 181. Finally, he moves to transfer venue. Doc. 183.

Given the procedural history of this case, Oliver's propensity to file flurries of motions, notices, and variously captioned documents with the Court, and his inclination to make serious allegations of misconduct against opposing counsel, the Court imposed special instructions applicable to any motion he filed in this case. *See* doc. 168 at 23-24. The Court required that:

    1. The motion must include the following statement:

"I declare under penalty of perjury under the laws of the United States of America that each fact asserted in the foregoing is true and correct. Executed on (date).";

2. Any allegation of misconduct by opposing counsel must include specific facts: broad allegations of "fraud" or the like, which are not supported by specific facts, will be regarded by the Court as frivolous;

3. Oliver must promptly notify the Court if he asserts any claim of misconduct against any counsel appearing in this case with any third party, including any state bar association or the press. That notice must include the specific factual basis for the allegation, and be certified under penalty of perjury, as described above; and

4. Any misconduct allegation must include a specific explanation of the prejudice Oliver has suffered, or fears he will suffer, because of it. Thus, assertions that he has not been served with a filing must explain *why* the failure to receive a filing has prejudiced his case.

*Id.* The Court further warned him:

> If he fails to comply with any of these requirements, the Court will presume he has wilfully disobeyed its Order and take appropriate measures. **Oliver is warned that dismissal of this action will be the *minimum* sanction imposed.**

*Id.* at 24. That was no idle threat.

Oliver complied with the Court's instructions to amend his Complaint. Doc. 169. He then attempted to serve it upon the defendants. *See generally* doc. 173 (detailing Oliver's allegations concerning difficulties in effecting service). Because of obstacles he and his hired process server encountered, he moved for injunctive relief. Doc. 173. That motion substantially, if not technically, complied with the Court's instructions. He has since filed two more motions, seeking Marshal service of the Amended Complaint and renewing his motion to transfer venue. Docs. 181 & 183.

2018 WL 1573560

Both motions omit the required certification of the facts alleged. *See* doc. 181 at 7; doc. 183 at 9. The motion to transfer makes serious allegations of threats and intimidation. Both motions also make bombastic allegations of misconduct based upon minimal (at best) factual support. *See, e.g.*, doc. 173 at 9 (alleging that hypothetical assertion of ineffective service "is one of the many dirty tactics deployed by USAA Bradford Patrick," and stating "[w]hat can be said here is that the Defendants, their counsel and the civilian employees of these law enforcement agencies are nothing more then [sic] bullies with badges and state bar cards."); doc. 183 at 3 ("Plaintiff filed this lawsuit against a group of thugs, enforcers, street criminals, crooks and members of a shake down organization called the Southern Georgia Regional Fugitive Task Force."); *id.* at 4 (alleging "Defendants ROLLINS, HOWELL and MCDUFFIE was able [sic] to hire some drug addict that was appearing in [an unidentified, but presumably, state-court proceeding] for criminal charges to provide a false statement about Plaintiff wishing to beat up the witness."). The Court is not unsympathetic to the rigors litigation imposes upon *pro se* parties, but even they must obey the Court's rules and its orders. *See, e.g., Moon v. Newsome*, 863 F.2d 835, 839 (11th Cir. 1989) ("[O]nce a *pro se* litigant is in court, he is subject to the relevant law and rules of the court, including the Federal Rules of Civil Procedure.").

**\*2** The Court has the authority to impose sanctions, including dismissal, on *pro se* parties for disobeying its orders. "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, *especially where the litigant has been forewarned*, generally is not an abuse of discretion." *Moon*, 863 F.2d at 867 (emphasis added) (citing *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982); *Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1169 n. 8 (5th Cir. 1980)). It also has the authority to impose sanctions for rude and disrespectful conduct. *See Maus v. Ennis*, 513 Fed.Appx. 872, 878 (11th Cir. 2013) ("The district court did not abuse its discretion when it imposed a default judgment against [the defendant] as a sanction" after finding "that he had exhibited rude and disrespectful behavior throughout the litigation."). Oliver was warned. *See* doc. 168 at 23 (cautioning Oliver that the tone of his pleadings was inappropriate and that "[i]f he continues to pursue his claims in this manner, the Court will be forced to conclude that his object is not justice, but spectacle.").

Accordingly, this case should be **DISMISSED with prejudice**. His motions for Marshal service and for transfer to another district are **DENIED as moot**. Doc. 183; doc.

185. Defendants' motions to dismiss and seeking a stay of deadlines in this case are, therefore, **DENIED as moot**. Doc. 180; doc. 186; doc. 187.

The United States Attorney, appearing as counsel for defendant Rollins, has informed the Court of Oliver's extensive history of abusive litigation. *See* doc. 96 at 2-3; *see also generally Oliver v. County of Los Angeles, et al.*, CV215-7791, doc. 110 (C.D. Cal. Feb. 22, 2016). The United States District Court for the Central District of California reviewed Oliver's litigation history and noted, as of February 2016, he "filed at least 22 lawsuits in federal court [since] 2009," of which *none* had resulted in a verdict in his favor on the merits. *Oliver*, CV215-7791, doc. 110 at 5. Based on its review of those cases, the court identified a pattern of "frivolous and harassing" filings. *Id.* at 7-9. The Court also noted that Oliver had "filed *a minimum* of 44 cases [in California state courts] between 2003 and 2013," when the State of California declared him a vexatious litigant. *Id.* at 10-11 (emphasis added). Although it declined to impose pre-filing restrictions on Oliver, the Court concluded by cautioning him to cease his abusive litigation practices. *Id.* at 13.

While there is "little doubt" this Court has the power and obligation to protect itself against abusive litigation, an abusive party "cannot be completely foreclosed from *any* access to the court." *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986). The *Procup* court noted the Court's responsibility is rooted in the need "to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Id.* at 1073. Oliver has demonstrated, both here and in the vast landscape of prior cases, he is unwilling to restrain himself from flagrantly abusing that machinery. "The time has come," therefore, "to impose some form and discipline upon Plaintiff's law practice...." *Washington v. Alaimo*, 934 F. Supp. 1395, 1400 (S.D. Ga. 1996).

Oliver should be **ENJOINED** from filing a lawsuit *pro se* in this Court unless the following conditions are met:

1. In addition to paying the Court's filing fee, Oliver must post a $1,000 contempt bond with the Clerk of Court. This bond will be held by the Clerk of Court and, if Plaintiff has conducted the affairs in his case appropriately, the bond will be returned to him at its conclusion.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Oliver v. County of Chatham, Not Reported in Fed. Supp. (2018)**

2018 WL 1573560

Case 3:19-cv-04110-RS Document 32-1 Filed 12/18/19 Page 19 of 70

2. Oliver must attach to any Complaint he files a signed affidavit in swearing he has read Federal Rule of Civil Procedure 11 and will abide by its provisions.

3. Oliver must also attach a photocopy of this Report and Recommendation, or subsequent Order as required by the District Judge, to his Complaint.

**\*3** Two issues regarding the bond are noteworthy. First, although the record of Oliver's financial status is limited, he has mentioned in pleadings purchasing an English bulldog in 2017 for $3,500. *See* doc. 169 at 6, ¶ 20. If he can afford to spend $3,500 on a pet, he can afford $1,000 for a litigation bond. Second, the bond is intended to ensure plaintiff brings meritorious cases and refrains from excessive filings and inflammatory remarks. Such inappropriate behavior will result in bond forfeiture.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 Fed.Appx. 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 Fed.Appx. 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 30th day of March, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1573560

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

Oliver v. County of Chatham, Not Reported in Fed. Supp. (2018)

2018 WL 2449201

2018 WL 2449201
Only the Westlaw citation is currently available.
United States District Court,
S.D. Georgia, Savannah Division.

Anthony OLIVER, Plaintiff,

v.

COUNTY OF CHATHAM, a public entity, Franklin
Rollins, Jr., individual and as Deputy Sheriff;
John T. Wilcher, individual and as Sheriff; Jimmie
McDuffie, individual and as Sheriff; Does 1-10,
inclusive; Marshal Rawl; Shane Sasser; Dale
Howell; Mark Lee; Chris Nease; Jeremy Scott;
Mike Kendricks; and John Rohrs; Defendants.

CASE NO. CV417-101
|
Signed May 30, 2018
|
Filed 05/31/2018

ORDER

WILLIAM T. MOORF, JR., UNITED STATES DISTRICT
JUDGE

**\*1** Before the Court is the Magistrate Judge's Report
and Recommendation (Doc. 189), to which objections have
been filed (Doc. 216). After a careful de novo review of
the record in this case, the Court concludes that Plaintiff's
objections are without merit. Accordingly, the report and

recommendation is **ADOPTED** as the Court's opinion in this
case. As a result, Plaintiff's Amended Complaint (Doc. 169)
is **DISMISSED WITH PREJUDICE.** As a result, Plaintiff's
Emergency Motion for Temporary Restraining Order (Doc.
173), Amended Motion for Service by United States
Marshals Service (Doc. 181), Motion for Oral Argument
(Doc. 196), Motion to Compel Discovery (Doc. 206), and
Defendant Howell's Motion for Extension of Time (Doc.
215) are **DISMISSED AS MOOT.** In addition, Plaintiff is
**ENJOINED** from filing a lawsuit pro se in this Court unless
he meets all three of the following conditions:

(1) In addition to paying the Court's filing fee, Plaintiff
must post a $1,000 contempt bond with the Clerk of
Court. This bond will be held by the Clerk of Court
and, if Plaintiff has conducted the affairs in his case
appropriately, the bond will be returned to him at its
conclusion;

(2) Plaintiff must attach to any Complaint he files a signed
affidavit swearing that he has read Federal Rule of Civil
Procedure 11 and will abide by its provisions;

(3) Plaintiff must also attach to his complaint both a
photocopy of the Report and Recommendation, and this
order.

The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 30th day of May 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2449201

**End of Document**          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT E

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| ANTHONY OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-063 |
| | ) | |
| LYFT, INC. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANTHONY A. OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-125 |
| | ) | |
| LYFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND REPORT AND RECOMMENDATION[1]

*Pro se* plaintiff Anthony Oliver is familiar—all too familiar—to the federal courts.[2] Earlier this year, the Court extended the filing conditions

---

[1] The Clerk is **DIRECTED** to docket this Report and Recommendation in both cases. Since the majority of the analysis below applies equally, and the undersigned recommends imposing the restrictions in both cases, it is presented once. The disposition of other case-specific matters are detailed below.

[2] The first of Oliver's cases in this Court that was dismissed for failure to obey the Court's orders was *Oliver v. County of Chatham, et al.*, CV417-101, doc. 189 (S.D. Ga. March 30, 2018) (finding that Oliver's continued assertion of "bombastic allegations of

it imposed on Oliver, based on his apparently incorrigible litigation conduct. *See Oliver v. City of Pooler, et al.*, CV418-100, doc. 59 (S.D. Ga. Feb. 28, 2019). Oliver's appeal of that Order has been dismissed for want of prosecution. *See* CV418-100, doc. 69 (S.D. Ga. April 23, 2019) (Mandate of the United States Court of Appeals for the Eleventh Circuit dismissing the appeal). In this case, defendant Lyft, Inc. has moved for an order restricting plaintiff's further litigation nationwide. *See* doc. 63 at 31. While the Court should decline to enjoin Oliver's litigation to the

---

misconduct based upon minimal (at best) factual support."), *adopted* doc. 220 (S.D. Ga. April 31, 2018). In the Report and Recommendation cited below, CV418-100, doc. 53, the Court noted that Oliver appeared to have manipulated the Court's process for allowing litigants to proceed *in forma pauperis*, *id.* at 2-4, continued to make "inflammatory accusations, unaccompanied by factual support," *id.* at 5-6. That Report and Recommendation also noted the thorough survey of Oliver's nationwide litigation history undertaken by the United States District Court for the Central District of California in declaring him a vexatious litigant. *Id.* at 6-7. That extensive and pervasive history of misconduct is the lamentable context for the present Report and Recommendation. His filings in these cases present more of the same. *See, e.g.,* doc. 1 at 4 (stating that the defendant "has dominated the ride share market by cheating, stealing, and committing violations of state and federal law to gain a tactical advantage over their own drivers, and passengers.); doc. 29 at 3 (describing Lyft's motion to transfer as "rambl[ing] on, and pepper[ed] with [irrelevant] exhibits), 14 (alleging defense counsel, "pulls the same bootleg tactics" of repeated extensions); *see also* doc. 97 at 3-5 (identifying Oliver's objectionable conduct); *Oliver v. Lyft, Inc.*, CV419-125, doc. 49 at 2 (referring to defendant's "crummy ride-sharing service" in a complaint alleging he was sent unsolicited text messages). He also continues to ignore the Court's instructions. *See, e.g.,* doc. 99 at 2 (directing Oliver to show cause why the litigation conditions previously imposed should not be imposed in this case).

2

extent that Lyft seeks, it should impose restrictions on Oliver's filings with this Court.

Scholars have labeled injunctions (in non-collective actions) that purport to bind a litigant's conduct generally as both innovative and "odd." Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harvard L. Rev. 417, 418-420 (2017). *But see* Zayn Siddique, *Nationwide Injunctions*, 117 Colum. L. Rev. 2095, 2097 (2017) (concluding that "the reality is that nationwide injunctions are far from 'unprecedented'—they are a regular feature of the equitable jurisprudence of federal courts."). Academic questions notwithstanding, injunctive relief is discretionary. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."). The Eleventh Circuit has stated that "[i]t is a bedrock principle" of equity that injunctive relief should only be imposed "when fundamental fairness and justice demand it." *See Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F. 3d 1320, 1340 (11th Cir. 2004). In this case, therefore, the Court should decline to restrict Oliver's litigation—even restricted to litigation against Lyft—nationwide.

It is, however, well-settled that the Court has the authority to protect itself against persistently frivolous litigation. As has often been said before, frivolous filings, like Oliver's, do nothing but impair this Court's ability to adjudicate the legitimate claims of other litigants, and the Court has the power and obligation to protect itself. *See, e.g., Procup v. Strickland*, 792 F.2d 1069, 1073-74 (11th Cir. 1986) (en banc) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). It's obvious that this Court's previous warnings have not deterred Oliver from continuing to waste judicial resources in this district. These cases demonstrate Oliver's willingness to file cases elsewhere, avoid this Court's existing filing restrictions, and thereafter transferring them to this Court.

More comprehensive action is thus warranted here. The following restrictions should apply:

1. In addition to paying the Court's filing fee, Oliver must post a $1,000 contempt bond with the Clerk of Court. In this case, he should post the required bond within fourteen days of the District Judge's adoption of this recommendation, or as ordered by the District Judge. This bond will be held by the Clerk and, if Plaintiff

4

has conducted the affairs in his case appropriately,[3] the bond will be returned to him at its conclusion;

2. If Plaintiff fails to post a contempt bond, the Court will review the Complaint and determine whether it states a claim for relief that is plausible on its face, any such Complaint will be **DISMISSED** without any further judicial action 30 days from the date the Clerk receives the complaint, unless the Court orders otherwise. This automatic dismissal of insubstantial claims "will reduce the burden of paper-moving and explanation-writing, conserving a little judicial time for litigants who deserve attention." *Alexander v. United States*, 121 F.3d 312, 315 (7th Cir. 1997). Thus, although the Court will read and consider any future Complaint that plaintiff endeavors to file, it will not necessarily enter an order addressing it. If no order is forthcoming, then 30 after the Complaint's receipt the Clerk shall, without awaiting any further direction, notify Oliver that his case has been dismissed without prejudice. The Clerk shall not issue a summons on any complaint filed without the required bond, without an order from the Court. If Oliver posts the required bond, the Clerk shall process the Complaint, including issuing the summons, according to normal procedures.

3. The Clerk shall not docket any further motions or papers in this case. The Clerk also shall not docket any further motions or papers in a case automatically dismissed pursuant to the directive above except for a notice of appeal. Any papers other than a notice of appeal shall be returned to Oliver unfiled. If Oliver files a notice of appeal, the Clerk shall forward a copy of this Report and Recommendation, the final disposition of this case by the district judge, the notice of appeal, and the dismissed complaint to the Court of Appeals. Oliver shall remain responsible for appellate

---

[3] Given his conduct in his litigation against Lyft, the Court advises Oliver that redundant litigation, *i.e.* filling multiple substantially identical claims against a single defendant, will be construed as misconduct and result in the forfeiture of any litigation bond he posts to file those claims.

filing fees or he may move this Court to grant IFP status on appeal.

4. To ensure that all future pleadings filed by Oliver are properly consolidated for review, the Clerk shall personally advise each deputy clerk of the Court's ruling in this case and develop a procedure for ensuring that all future complaints filed by Oliver are immediately assigned and forwarded to the presiding district judge in this case, regardless of which divisional clerk's office receives and dockets the papers.

5. Oliver may file a motion to modify or rescind the imposition of these restrictions no earlier than 1 year from the date of this Report and Recommendation.

6. These filing restrictions do not apply to any criminal case in which Oliver is named as a defendant or to any proper application for a writ of habeas corpus.[4]

7. Plaintiff must attach to any Complaint he files a signed affidavit swearing that he has read Federal Rule of Civil Procedure 11 and will abide by its provisions.

8. These requirements shall apply to any action transferred or removed to this Court, which Oliver files in another United States District Court or state court. Upon the docketing of the notice of removal or order transferring the case, the Clerk shall notify Oliver of his obligation by serving a copy of this Report and Recommendation and the District Judge's final Order upon him. If Oliver fails to post the required bond within fourteen days of service of the notice of removal or the transfer order, the Clerk

---

[4] The Court has been successfully managing other malicious serial filers with this method. *See, e.g., Williams v. Darden,* 2016 WL 6139926 (S.D. Ga. Oct. 21, 2016) *Fields v. Terminal*, 2016 WL 823020 (S.D. Ga. Feb. 26, 2016); *Hurt v. Zimmerman*, CV415-260, doc. 3 (S.D. Ga. Oct. 7, 2015); *Robbins v. Universal Music Grp.*, 2015 WL 171443 (S.D. Ga. Jan. 13, 2015); *Finch-Grant v. Long*, 2014 WL 3888124 (S.D. Ga. Aug. 6, 2014).

shall follow the procedures outlined above for cases filed without a contempt bond.

Accordingly, Lyft's motion to impose pre-filing restrictions on Oliver should be **GRANTED, in part**. Doc. 63. As the imposition of these conditions may cause Oliver to reconsider the prudence of pursuing this action, all deadlines are **STAYED** pending the District Judge's consideration of this Report and Recommendation. The Clerk is **DIRECTED** to **ADMINISTRATIVELY TERMINATE** all pending motions in this case, pending that review.

To the extent that Oliver wishes to pursue this matter through arbitration, *see* doc. 106, he remains free to voluntarily dismiss it and refile it with the appropriate arbitral body. Whether or not he concedes that this case should be voluntarily dismissed, his conduct before this Court warrants imposition of the restrictions detailed above.

Lyft has effectively incorporated its motion to declare Oliver a vexatious litigant in this case into a companion case, *Oliver v. Lyft, Inc.*, CV4:19-125. *See* CV4:19-125, doc. 52 at 3-4. For the reasons explained above, that motion should also be **GRANTED, in part**. The Clerk is **DIRECTED** to **ADMINISTRATIVELY TERMINATE** all motions pending in this case (CV4:19-125) pending review of the above

7

recommendations by the District Judge.   Oliver has, however, apparently conceded that CV4:19-125 should also be dismissed and proceed in arbitration.  *See* CV4:19-125, doc. 50; doc. 53.  As above, if he wishes to pursue this dispute in arbitration, he is free to voluntarily dismiss it and refile it before the appropriate arbitral body.  Given the additional conditions recommended above, if Oliver does wish to voluntarily dismiss, he must file a further notice.  Also, as above, whether he voluntarily dismisses this case or not, the restrictions on his future litigation will be imposed.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 13th day of September, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# EXHIBIT F

U. S. DISTRICT COURT
For Southern District of Ga.
Filed in Office
10 21 20 19
M
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ANTHONY OLIVER,              )
                            )
        Plaintiff,          )
                            )
v.                          )        CASE NO. CV419-063
                            )
LYFT, INC., et al.          )
                            )
        Defendants.         )
                            )
_____

ANTHONY A. OLIVER,          )
                            )
        Plaintiff,          )
                            )
v.                          )        CASE NO. CV419-125
                            )
LYFT, INC.,                 )
                            )
        Defendant.          )
                            )
_____

## O R D E R

Before the Court is the Magistrate Judge's Report and Recommendation (419CV063, Doc. 113; 419CV125, Doc. 54), to which no objections have been filed. After a careful de novo review of the record in this case, the report and recommendation is **ADOPTED** as the Court's opinion in this case. All filing restrictions and other instructions outlined by Magistrate Judge Ray in the report and recommendation are **ADOPTED** by this Court.

The Court notes that Plaintiff has filed a Notice of Voluntary Dismissal in both of his cases. (419CV063, Doc. 114; 419CV125, Docs. 53, 55.) As stated by the Magistrate Judge and adopted by this Court herein, Plaintiff remains free to dismiss his cases, however, due to the conditions being imposed upon Plaintiff, Plaintiff must file a further notice to effectuate dismissal. (419CV063, Doc. 113 at 8; 419CV125, Doc. 54 at 8.)

SO ORDERED this 21ST day of October 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

2

# EXHIBIT G

Case 8:10-cv-02110-RS   Document 22-1   Filed 12/18/13   Page 36 of 70

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

ANTHONY ALLEN OLIVER,

              Plaintiff,

    v.

COUNTY OF ISANTI, RUSSELL
MONSON, CHRIS CAULK, JOHN DOE 1,
JOHN DOE 2, JOHN DOE 3, THOMAS
WEDES, CITY OF CAMBRIDGE, VERN
JOHNSON, JOHN DOE 4, RETAILER'S
PROTECTION ASSOCIATION, JANE
DOE 1, MENARD'S INC., TOM, JOHN
DOE 5, JANE DOE 2, JOHN DOE 6,
JOHN DOE 7, SUPER AMERICA GAS
INC, JANE DOE 3, JANE DOE 4,
MINNCO CREDIT UNION, JAN, and
BECKY,

              Defendants.

Civil No. 10-4218 (ADM/JJG)

**REPORT AND
RECOMMENDATION**

_____

       Plaintiff, a prisoner in a California state prison, commenced this action by filing a

pleading entitled "Complaint For Violation Of Civil Rights Under 42 U.S.C. 1983." (Docket

No. 1.)  The case has been referred to this Court for initial screening pursuant to 28 U.S.C.

§ 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and

Local Rule 72.1.[1]  For the reasons discussed below, the Court will recommend that this

action be summarily dismissed pursuant to § 1915A(b).

_____

      [1]  Plaintiff did not tender the statutory filing fee of $350.00 with his complaint, but he
instead applied for leave to proceed in forma pauperis, ("IFP").  (Docket No. 2.)  Plaintiff's
IFP application indicates that he might be unable to afford even the initial partial filing fee
that prisoners are required to pay pursuant to 28 U.S.C. § 1915(b)(1).  Based on the limited
information in the IFP application, the Court finds that Plaintiff has "no assets and no
means by which to pay the initial partial filing fee," (28 U.S.C. § 1915(b)(4)), and that this
matter should proceed directly to the initial screening process prescribed by § 1915A.

## I. BACKGROUND

Plaintiff is attempting to sue twenty four (24) Defendants, including private citizens, corporations, law enforcement officials and municipal entities.   Plaintiff's complaint describes a series of incidents that began in Cambridge, Minnesota, on October 24, 2007. On that day, Plaintiff was drinking and got into an argument with his girlfriend.   The argument evolved into a "pushing match," and the police were called.   Sheriff's deputies responded to the call, and apprehended Plaintiff.   The deputies, (whose names apparently are unknown to Plaintiff), allegedly took Plaintiff's wallet, cell phone, house keys, checkbook and some cash, and gave those items to Plaintiff's girlfriend.

While Plaintiff was in custody, his girlfriend fled from the City of Cambridge, and took many of Plaintiff's possessions with her.   Before leaving town, the girlfriend apparently issued several checks drawn on Plaintiff's checking account.   Many of those checks were not paid due to non-sufficient funds, ("NSF"), in Plaintiff's account.   Defendant Minnco Credit Union informed Plaintiff that there were 97 such NSF checks.   Two of the parties who had received NSF checks, Defendants Menard's Inc and Super America Gas Inc., contacted Plaintiff and sought reimbursement from him.   Plaintiff later learned that those two Defendants had turned over their collection efforts to Defendant Retailer's Protection Agency, ("RPA").   Plaintiff visited the offices of RPA, and a woman there told him that the police had been contacted about the NSF checks.   Plaintiff yelled at the woman, and she called the police.   When the police arrived, they asked Plaintiff to leave the premises, and he did so.

After Plaintiff left RPA, he visited both Menard's and Super America to discuss his NSF checks.   At Super America, Plaintiff was told, (apparently for a second time), that the

NSF checks had been turned over to RPA for collection.  He asked for a "fraud form," but his request was denied.  At Menard's, Plaintiff talked to the store manager, Defendant "Tom," about the NSF checks.  During their conversation, two unidentified "store security officers" approached and informed Tom that Plaintiff had previously come into the store, purchased merchandise with checks, and later traded the merchandise for drugs.  The security officers also accused Plaintiff of being involved in a local "meth lab."  Plaintiff denied the allegations, but the store manager asked him to leave the store.  As Plaintiff was leaving, the security officers began to chase him, and he fell onto some plants.

While Plaintiff was still at the Menard's store, Defendant Chris Caulk, a sheriff's deputy arrived at the scene.  The store security officers told Caulk that Plaintiff had robbed the store, and was "under the influence."  Caulk asked Plaintiff for permission to search his car, and Plaintiff consented.  Although nothing was found in Plaintiff's car, he was handcuffed and detained at the store, while Caulk left the store and searched for any possible warrants against Plaintiff.  While Caulk was gone, the store security officers temporarily removed the handcuffs, and Plaintiff then tried to run away.  The security officers caught Plaintiff, and one of them allegedly kicked Plaintiff.  When Caulk returned to the store, he advised Plaintiff that there were no warrants, and he was free to leave.

Although Plaintiff allegedly was injured when he attempted to flee from the security officers at Menard's, he did not seek any medical treatment immediately, but instead made arrangements to leave town and travel to California.  When Plaintiff arrived in California, he did seek medical attention, and he was told he had sustained an injury to one of his testicles.

While Plaintiff was in California, he contacted RPA again, presumably to discuss the

NSF checks that RPA had been attempting to collect. Plaintiff was told that someone would be obtaining a warrant for his arrest, and approximately eight months later a warrant allegedly was issued, (for reasons that are not explained in the complaint).

Plaintiff also contacted Minnco Credit Union. He talked to a representative named "Becky," and asked her for a "fraud statement," but she said "no." Becky informed Plaintiff that Minnco Credit Union was not involved in any criminal case against Plaintiff, that his checking account was still open, and that she had turned over his records to her boss.

On July 3, 2008, Plaintiff caused a car accident while he was drinking and driving. Someone was injured in the accident, and Plaintiff was arrested and detained in the county jail in Pima County, Arizona. He allegedly spent nine days in jail pursuant to a warrant issued in the State of Minnesota. On December 26, 2008, Plaintiff was extradited to California, pursuant to a warrant issued by that State. He was later convicted of a California criminal offense, (the nature of which is not discussed in the complaint), and was sentenced to three years in state prison. Plaintiff is currently serving that sentence at the California Correctional Institution in Tehachapi, California.

While in prison, Plaintiff again contacted Minnco Credit Union, and talked to someone named "Jan." Plaintiff again asked for a "fraud statement," and his request was again denied. However, Plaintiff later received an "affidavit of fraud and forgery" from the Cambridge Police Department. Upon receiving those materials, Plaintiff asked for a "status report" and a "claim form," but that request has not been answered.

Plaintiff alleges that he has contacted all of the named Defendants, and informed them that he intended to sue them. He also allegedly contacted a county attorney, Defendant Thomas Wedes, and asked him to dismiss a still outstanding warrant.

Defendant Wedes allegedly apologized for issuing the warrant, but refused to dismiss it.

Based on the foregoing allegations, Plaintiff is attempting to sue Isanti County, Minnesota, Russell Monson, (who is identified as the Sheriff of Isanti County), Deputy Chris Caulk, County Attorney Thomas Wedes, the City of Cambridge, Minnesota, Vern Johnson, (who is identified as a police detective for the City of Cambridge), RPA, Menard's Inc., "Tom," Super America Gas, Inc., Minnco Credit Union, "Jan," "Becky," and eleven defendants identified only as "John Doe" or "Jane Doe." Plaintiff is seeking a judgment "in excess of $250,000 from each Defendant."

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees and entities, (as well as numerous private individuals and entities), his complaint must undergo preliminary screening pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("PLRA"), requires federal courts to review the pleadings in every prisoner civil action brought against governmental entities and employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that the pleading, on its face, fails to state a cognizable claim, it must be summarily dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to a judgment against the defendant(s) under some cognizable legal theory. While federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286

(8th Cir. 1980). <u>See also</u>, <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) ('[a]lthough it is to be liberally construed, a <u>pro se</u> complaint must contain specific facts supporting its conclusions"); <u>Stone v. Harry</u>, 364 F.3d 912, 915 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

In this case, the caption of Plaintiff's complaint shows that he is attempting to bring a civil rights action under 42 U.S.C. § 1983. To state an actionable § 1983 civil rights claim, a complaint must allege facts showing that each named defendant somehow violated the complainant's federal constitutional rights while that defendant was acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). In order to state an actionable § 1983 claim against a particular defendant, the complaint must describe (a) what, specifically, that defendant allegedly did or failed to do, and (b) how that defendant's acts or omissions allegedly violated some specific right protected by the federal Constitution. <u>See</u> <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001) (to state an actionable civil rights claim, a complaint must describe what, specifically, each named defendant did, or failed to do, that allegedly violated the claimant's constitutional rights); <u>Ellis v. Norris</u>, 179 F.3d 1078, 1079 (8th Cir. 1999) (civil rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing). <u>See also</u> <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability in a civil rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution); <u>Speed v. Ramsey County</u>, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (same).

In this case, Plaintiff has not pleaded an actionable civil rights claim because his complaint does not describe any acts or omissions by any of the named Defendants that

allegedly violated the federal Constitution.  Indeed, Plaintiff's complaint does not even mention the federal Constitution, and it does not even allude to any constitutional rights. Plaintiff certainly has not alleged that any particular Defendant violated any particular provision of the Constitution while that Defendant was acting under color of state law.  For this reason alone, Plaintiff has clearly failed to plead any actionable civil rights claim.

However, Plaintiff's complaint is fatally defective not only because it makes no reference to the Constitution, but also because the factual allegations in the complaint could not support any conceivable § 1983 claim against any of the named Defendants. Even if the complaint did identify some particular constitutional foundation, most of the Defendants would have to be summarily dismissed from this action, simply because they are private parties, and not state actors.  Private parties can sometimes be sued under § 1983, if they conspire with state actors to violate a person's constitutional rights, but Plaintiff's complaint does not state any actionable conspiracy claim.  Although Plaintiff's complaint is peppered with vague assertions that certain Defendants acted "in concert," he has not alleged any specific facts to support any of those conclusory allegations.  It is well settled that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2nd Cir. 2002).  See also Brooks v. Gaenzle, 614 F.3d 1213, 1228 (10th Cir. 2010) (to plead an actionable § 1983 claim against a private party, "'a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants'") (citations omitted).

The Court further notes that Plaintiff seems to be attempting to sue several Defendants, (e.g., Isanti County, Russell Monson, City of Cambridge, Menard's Inc., Super

America Gas Inc., Minnco Credit Union), based solely on alleged acts or omissions by their employees or subordinates. He apparently believes these supervisory defendants should be held vicariously liable for the acts or omissions of their employees or subordinates. However, that theory is unsustainable, because the doctrine of respondeat superior does not apply to § 1983 claims. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978). Therefore, even if Plaintiff's claims against the supervisory defendants were somehow based on the Constitution, he still would have no actionable § 1983 claim against them.

Finally, to the extent that Plaintiff is attempting to sue genuine state actors, for their own personal acts or omissions, his complaint fails to state an actionable § 1983 claim, because he has not described any specific conduct, by any particular individual, that could be viewed as a violation of his constitutional rights. For example, Plaintiff alleges that in April 2008 he went to RPA and yelled at one of its employees. (Complaint, p. 4.) The employee called the police. Defendant "John Doe 4" responded to the call, asked Plaintiff for identification, and then directed him to leave. These allegations do not describe any conceivable violation of Plaintiff's federal constitutional rights. Plaintiff's claims against other Defendants are similarly flawed.

## III. CONCLUSION

For all of the reasons discussed above, the Court concludes that Plaintiff's complaint fails to state a cause of action on which relief can be granted. Simply put, Plaintiff has failed to plead an actionable § 1983 claim, because his complaint does not show any violation of his federal constitutional rights. Therefore, this case must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b), and Plaintiff's application for leave to proceed

in forma pauperis, (see n. 2, supra), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $350.00 filing fee for this case.[2]  To date, he has not paid anything, so he still owes the full $350.00.  Prison officials will have to deduct that amount from Plaintiff's institutional trust account, and pay it to the Clerk of Court, in the manner prescribed by 28 U.S.C. § 1915(b)(2).  Finally, because Plaintiff has failed to plead an actionable claim for relief, the dismissal of this action should count as a "strike" against him for purposes of 28 U.S.C. § 1915(g).

## IV.  RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

2. This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the full $350.00, in accordance with 28 U.S.C. § 1915(b)(2); and

---

[2]  Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action.  However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee."  In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee.  Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time").  Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee.  See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."


Dated:  November 3, 2010                          s/ Jeanne J. Graham
                                                  JEANNE J. GRAHAM
                                                  United States Magistrate Judge


## NOTICE

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **November 19, 2010**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ANTHONY ALLEN OLIVER,

            Plaintiff,

v.

COUNTY OF ISANTI, RUSSELL MONSON,
CHRIS CAULK, JOHN DOE 1, JOHN DOE 2,
JOHN DOE 3, THOMAS WEDES, CITY OF
CAMBRIDGE, VERN JOHNSON, JOHN DOE
4, RETAILER'S PROTECTION
ASSOCIATION, JANE DOE 1, MENARD'S
INC., TOM, JOHN DOE 5, JANE DOE 2,
JOHN DOE 6, JOHN DOE 7, SUPER
AMERICA GAS INC, JANE DOE 3, JANE
DOE 4, MINNCO CREDIT UNION, JAN, and
BECKY,

            Defendants.

Civil No. 10-4218 (ADM/JJG)

## ORDER ON REPORT AND RECOMMENDATION

The above-entitled matter came before the Court upon the Report and Recommendation of the United States Magistrate Judge. No objections have been filed to that Report and Recommendation in the time period permitted.

Based upon the Report and Recommendation of the Magistrate Judge, and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), is **DENIED**;

2. This action is **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff is required to pay the unpaid balance of the Court filing fee, namely the full $350.00, in accordance with 28 U.S.C. § 1915(b)(2); and

4.  For purposes of 28 U.S.C. § 1915(g), this action is dismissed "on the grounds
    that it is frivolous, malicious, or fails to state a claim on which relief may be
    granted."

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 30, 2010          s/Ann D. Montgomery

                                   _____
                                   ANN D. MONTGOMERY
                                   United States District Judge

# EXHIBIT I

MDR

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Anthony Oliver, | ) | No. CV 10-158-TUC-JMR |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Reays Ranch Investors, et al., | ) | |
| Defendants. | ) | |

On March 15, 2010, Plaintiff Anthony Oliver, who is confined in the California Department of Corrections and Rehabilitation's California Correctional Institution in Tehachapi, California, filed a *pro se* civil rights Complaint and an "Application to Proceed in District Court without Prepaying Fees or Costs."  In a March 24, 2010 Order, the Court denied without prejudice the Application to Proceed because it was not filed on a court-approved form and was incomplete, and dismissed the Complaint because Plaintiff had not filed it on a court-approved form.  Plaintiff was given 30 days to file an Application to Proceed *In Forma Pauperis* on a court-approved form and 30 days to file an amended complaint on a court-approved form.

On April 23, 2010, Plaintiff filed, among other things, a First Amended Complaint and an Application to Proceed *In Forma Pauperis*.  In a June 2, 2010 Order, the Court, among other things, granted Plaintiff's Application to Proceed and dismissed Plaintiff's First Amended Complaint because Plaintiff had failed to state a claim upon which relief could be

granted. Plaintiff was given 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

On June 28, 2010, Plaintiff filed a Second Amended Complaint (Doc. 21). The Second Amended Complaint and this action are dismissed.

**I.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

. . . .

. . . .

## II.    Second Amended Complaint

In his three-count Second Amended Complaint, Plaintiff sues the following Defendants: Reays Ranch Investors, Chief Executive Officer/Owner Gordon Reay, Chief Operations Officer/Part Owner Tracy Collette, and Part Owner/ Security Department Rod Herbert.

In Count One, Plaintiff alleges a violation of his Fourteenth Amendment rights to due process and equal protection based on "malicious prosecution." He claims that he was employed by Defendant Reays Ranch Investors as a gas station cashier, that he was arrested by the Tucson Police Department pursuant to a citizen's arrest complaint by Defendant Reays Ranch Investors because "corporate" believed he had been stealing money from his cash register, but that the criminal cases were eventually dismissed for a lack of evidence.

In Count Two, Plaintiff contends that Defendants deprived him of his Sixth Amendment right to confront witnesses because Defendant Reays Ranch Investors told Plaintiff, his attorney, the prosecutor, and the trial court, during the course of the criminal cases, that the witnesses were unavailable. Plaintiff claims that Defendant Reays Ranch Investors would not allow Plaintiff or his attorney to interview the witnesses and only provided their first names. Plaintiff also asserts that Defendant Reays Ranch Investors eventually recanted its story after Defendants Reays, Collette, and Herbert acknowledged that one of the witnesses actually stole the money.

In Count Three, Plaintiff alleges that Defendants violated his Fifth Amendment right to due process because they signed a citizen's arrest complaint stating that Plaintiff had stolen money and that they had substantial evidence to support their allegation.

In his Request for Relief, Plaintiff seeks monetary damages and his attorney's fees and costs.

## III.    Failure to State a Claim

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50

(1999) (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1002 (1982)). "[S]tate action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" <u>Id.</u> (quoting <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)). Defendants are private parties, not state actors.

Alternatively, private parties who are jointly engaged with state officials in the challenged action are acting under color of law. <u>Collins v. Womancare</u>, 878 F.2d 1145, 1154 (9th Cir. 1989). But "merely complaining to the police does not convert a private party into a state actor. Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action" <u>Id.</u> at 1155 (citations omitted). Additionally, a "police officer's issuance of citations based on the citizen's arrests does not constitute joint action." <u>Id.</u> at 1156. Defendants are private parties. Their citizen's arrest complaints and interactions with the police are insufficient to convert their private actions into state action.

Plaintiff has failed to state a claim in his Second Amended Complaint. The Second Amended Complaint is dismissed.

**IV.    Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Second Amended Complaint, his Second Amended Complaint is dismissed. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. <u>Sisseton-Wahpeton Sioux Tribe v. United States</u>, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. <u>Moore</u>, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further

opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    Plaintiff's Second Amended Complaint (Doc. 21) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)    The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3)    The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 16th day of July, 2010.

_John M. Roll_
Chief United States District Judge

# EXHIBIT J

MDR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Anthony Oliver, | ) | No. CV 10-169-TUC-JMR |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Donald Sloane, et al., | ) | |
| Defendants. | ) | |

On March 24, 2010, Plaintiff Anthony Oliver, who is confined in the California Department of Corrections and Rehabilitation's California Correctional Institution in Tehachapi, California, filed a *pro se* civil rights Complaint and an "Application to Proceed in District Court without Prepaying Fees or Costs." In a March 29, 2010 Order, the Court denied without prejudice the Application to Proceed because it was not filed on a court-approved form and was incomplete, and dismissed the Complaint because Plaintiff had not filed it on a court-approved form. The Court gave Plaintiff 30 days to file an Application to Proceed *In Forma Pauperis* on a court-approved form and 30 days to file an amended complaint on a court-approved form.

On April 23, 2010, Plaintiff filed a First Amended Complaint and an Application to Proceed *In Forma Pauperis*. In an April 28, 2010 Order, the Court granted the Application to Proceed and dismissed without prejudice the First Amended Complaint. The Court gave Plaintiff 30 days to file a Second Amended Complaint that cured the deficiencies identified in the Order.

On May 28, 2010, Plaintiff filed a Second Amended Complaint (Doc. #15).  The Court will dismiss the Second Amended Complaint and this action.

**I.  Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

**II.  Second Amended Complaint**

In his three-count Second Amended Complaint, Plaintiff sues the following Defendants at Millers Surplus: Owner/Chief Executive Officer Donald Sloane and Assistant Managers James Clay, Michelle Davis, and Trevor Busby.

- 2 -

In Count One, Plaintiff alleges a violation of his Fourth Amendment rights. He asserts that he was employed at Millers Surplus and had consented to a background check, Defendants Clay and Busby discovered that Plaintiff had an outstanding felony warrant, Defendant Sloane had Defendant Davis contact the police, and Defendants Sloane and Clay provided the police with a copy of the outstanding warrant. Plaintiff also states that he had placed a pair of handcuffs from the store into his pocket when attempting to thwart a shoplifter, but when Defendants Sloane and Clay discovered the handcuffs in Plaintiff's pocket, they informed the police that they wanted to have Plaintiff placed 'under citizens arrest." Plaintiff was arrested, charged with shoplifting, and was extradited to California based on the outstanding felony warrant. Plaintiff claims that Defendant Sloane spoke to the media about the arrest and stated that Defendants had called the police and that "'it was a joint effort to arrest [Plaintiff]." Plaintiff contends that he left at the store two military uniforms and a gym bag containing personal items, and that Defendants did not return the personal belongings to Plaintiff or deliver them to the police.

In Count Two, Plaintiff asserts that his Fifth Amendment rights were violated. He claims Defendant Davis took his personal belongings, photographed them, put Plaintiff's valuables in box, posted photocopies of Plaintiff's driver's license and Social Security card in the store window, and threw Plaintiff's gym bag into the trash. Plaintiff contends that Defendant Sloane sold Plaintiff's uniforms, Defendants Clay and Busby took his wallet, and his debit card was used while he was in police custody. Plaintiff alleges that he requested Defendant Sloane compensate him for his personal belongings, but Defendant Sloane refused.

In Count Three, Plaintiff alleges a violation of his Fourteenth Amendment rights to due process and equal protection. Plaintiff contends that because Defendants signed criminal citizen's arrest complaints and the police arrested Plaintiff, Defendants acted together with the police to have him arrested and, therefore, were acting under color of state law to deprive him of his liberty and property. Plaintiff also asserts that Defendant Sloane "acted under color of state law and worked with the police to have [Plaintiff] arrested, [Defendant Sloane]

violated my due process clause and rights to equal protection. [Defendant Sloane] later sold [Plaintiff's] uniforms in his store and denied [Plaintiff his] right to get [his] property back." Plaintiff claims that once the police allowed Defendants to sign the citizen's arrest complaints and Plaintiff was charged with shoplifting, "all parties were jointly engaged and acted under color of state law."

In his Request for Relief, Plaintiff seeks monetary damages and his attorney's fees and costs.

## III.    Failure to State a Claim

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). "[S]tate action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). Defendants are private parties, not state actors.

Alternatively, private parties who are jointly engaged with state officials in the challenged action are acting under color of law. Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989). But "merely complaining to the police does not convert a private party into a state actor. Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action" Id. at 1155 (citations omitted). Additionally, a "police officer's issuance of citations based on the citizen's arrests does not constitute joint action." Id. at 1156. Defendants are private parties. Their citizen's arrest complaints and interactions with the police are insufficient to convert their private actions into state action.

Plaintiff has failed to state a claim in his Second Amended Complaint. The Court will dismiss the Second Amended Complaint.

## IV.    Dismissal without Leave to Amend

"Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    Plaintiff's Second Amended Complaint (Doc. #15) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)    The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3)    The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 4th day of June, 2010.

_____
John M. Roll
Chief United States District Judge

- 5 -

# EXHIBIT K

FILED

2010 MAY 11  PM 4: 28

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY ALLEN OLIVER,
CDCR #AA-9551,

Plaintiff,

vs.

WILLIAM D. GORE, et al.,

Defendants.

Civil No.    09-2505 BEN (POR)

**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b) AND FOR FAILING TO EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO 42 U.S.C. § 1997e**

## I.    PROCEDURAL HISTORY

On November 5, 2009, Anthony Allen Oliver ("Plaintiff"), a state prisoner currently incarcerated at California Correctional Institution located in Tehachapi, California and proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff did not prepay the $350 filing fee mandated by 28 U.S.C. § 1914(a); instead he filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) [Doc. No. 7].

/ / /

/ / /

1    The Court granted Plaintiff's Motion to Proceed IFP, but sua sponte dismissed his
2  Complaint for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *See* Feb.
3  22, 2010 Order at 7-8. Nonetheless, Plaintiff was granted leave to file an Amended Complaint
4  in order to correct the deficiencies of pleading identified by the Court. *Id.* at 8. On February 25,
5  2010, Plaintiff filed his First Amended Complaint ("FAC"), along with a Motion to Appoint
6  Counsel. [Doc. Nos. 11, 12]. The Court, once again, dismissed Plaintiff's First Amended
7  Complaint for failing to state a claim. On March 22, 2010, Plaintiff filed his Second Amended
8  Complaint ("SAC").

9  **II.   SUA SPONTE SCREENING PER 28 U.S.C. §§ 1915(e)(2) & 1915A**

10   The Prison Litigation Reform Act ("PLRA") obligates the Court to review complaints
11  filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained
12  in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of
13  criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary
14  program," "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b).
15  Under these provisions, the Court must sua sponte dismiss any IFP or prisoner complaint, or any
16  portion thereof, which is frivolous, malicious, fails to state a claim, or which seeks damages
17  from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*,
18  203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Resnick v. Hayes*, 213 F.3d
19  443, 446 (9th Cir. 2000) (§ 1915A).

20  **A.   42 U.S.C. § 1983**

21   Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person
22  acting under color of state law committed the conduct at issue, and (2) that the conduct deprived
23  the claimant of some right, privilege, or immunity protected by the Constitution or laws of the
24  United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on*
25  *other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d
26  1350, 1354 (9th Cir. 1985) (en banc).

27  / / /
28  / / /

## B.  Failure to Exhaust Administrative Remedies

The PLRA amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516 (2002). "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," *Booth v. Churner*, 532 U.S. 731, 738 (2001), and "regardless of the relief offered through administrative procedures." *Id.* at 741. Moreover, the Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Id.* at 90. The Court further held that "[proper exhaustion] means . . . a prisoner must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bring suit in federal court." *Id.*

The plain language of 42 U.S.C. § 1997e(a) provides that no § 1983 action "shall be *brought* . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The Ninth Circuit's decision in *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002) holds that prisoners who are incarcerated at the time they file a civil action which challenges the conditions of their confinement are required to exhaust "all administrative remedies as are available" as a mandatory precondition to suit. *See McKinney*, 311 F.3d at 1198; *see also Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 534-35 (7th Cir. 1999) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*.") (emphasis original). Section 1997e(a) "clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement. Exhaustion subsequent to the filing of the suit will not suffice." *McKinney*, 311 F.3d at 1198 (quoting *Medina-Claudio v. Rodriquez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002)).

/ / /

1   Here, Plaintiff admits that he failed to exhaust his available administrative remedies at
2   the time he brought this action because "this is a civil matter between Plaintiff and a county
3   entity, not a state entity." (*See* SAC at 8.) Plaintiff is seeking to hold individual Sheriff
4   Deputies and William Gore, Sheriff of San Diego County, liable for alleged constitutional
5   violations while he was in their custody. The plain language of 42 U.S.C. § 1997e(a) provides
6   that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a
7   prisoner confined in any jail, prison or other correctional facility until such administrative
8   remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, Plaintiff is obligated to
9   exhaust all his administrative remedies before bringing this suit and this matter is **DISMISSED**
10  for failing to exhaust his administrative remedies. *Wyatt*, 315 F.3d at 1120 ("A prisoner's
11  concession to nonexhaustion is a valid ground for dismissal."). The Court will also consider
12  Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A.

13  **C.    Excessive Force Claims**

14  Plaintiff claims that excessive force was used against another inmate who was being
15  transported with Plaintiff to the Vista Detention Facility. (*See* SAC at 10.) Specifically, Plaintiff
16  alleges that Defendant Hernandez used excessive force against the other inmate who was
17  "bodyslammed" into Plaintiff causing an injury to Plaintiff.

18  As the Court previously informed Plaintiff, the use of force on a person imprisoned for
19  conviction of a crime can rise to the level of cruel and unusual punishment in violation of the
20  Eighth Amendment when the action amounts to the "malicious or sadistic" use of force. *Hudson*
21  *v. McMillian*, 503 U.S. 1, 7 (1992); *Spain v. Procunier*, 600 F.2d 189, 197 (9th Cir. 1979).
22  However, because Plaintiff was a pretrial detainee during the time period alleged in his Second
23  Amended Complaint, the Fourteenth Amendment applies to Plaintiff's claim. The Eighth
24  Amendment's prohibitions do not apply "until after conviction and sentence." *Graham v.*
25  *Connor*, 490 U.S. 386, 392 n.6 (1989). Pretrial detainees, on the other hand, are protected by
26  substantive due process, and may also challenge the use of force against them under the
27  Fourteenth Amendment if that force is so excessive that it amounts to punishment. *Bell v.*
28  *Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be

1   punished prior to an adjudication of guilt in accordance with due process of law."). For pretrial

2   detainees, "who have not been convicted of any crimes, retain at least those constitutional rights

3   that we have held are enjoyed by convicted prisoners." *Id.* at 545; *Redman v. County of San*

4   *Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991) (en banc) (holding that "deliberate indifference is

5   the level of culpability that pretrial detainees must establish for a violation of their personal

6   security interests under the Fourteenth Amendment," and "conduct that is so wanton or reckless

7   with respect to the 'unjustified infliction of harm as is tantamount to a knowing willingness that

8   it occur,' will also suffice to establish liability because it is conduct equivalent to a deliberate

9   choice.") (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)); *see also White v. Roper*, 901

10  F.2d 1501, 1507 (9th Cir. 1990) (for a pretrial detainee to show a violation of substantive due

11  process, he must show "egregious government conduct in the form of excessive and brutal use

12  of physical force.").

13       In deciding whether the force used is "excessive," the court should consider: "(1) the

14  need for force; (2) the relationship between the need and the amount of force used; (3) the extent

15  of injury inflicted; and (4) whether the force was applied in good faith."). *Id.*; *cf. Hudson*, 503

16  U.S. at 7 (considering same four *Whitley* factors under Eighth Amendment excessive force

17  analysis); *see also Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (citing *Rochin v.*

18  *California*, 342 U.S. 165, 169 (1952) (holding that when conduct by governmental officials

19  "offends those canons of decency and fairness which express the notions of justice of

20  English-speaking peoples," and "shocks the conscience," Fourteenth Amendment substantive

21  due process principles are violated)).

22       Regardless of whether the Eighth or Fourteenth Amendment governs Plaintiff's cause of

23  action under 42 U.S.C. § 1983, however, the Court finds that, under either standard outlined

24  above, the allegations set forth in the Second Amended Complaint fail to state an excessive use

25  of force claim based on the use of the mechanical restraints or the fact that Plaintiff was injured

26  during an altercation between a different inmate and jail official.[1] There are no specific factual

27  _____

28       [1] The Ninth Circuit has noted that while different Constitutional provisions may be applied dependent on whether a plaintiff's claim arise before or after conviction, a "pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment,"

allegations to support the objective prong of an excessive force claim. Additionally, Plaintiff sets forth no allegations whatsoever which, if proven, would satisfy the subjective prong of an excessive force claim. There are no allegations that any Defendant inflicted any pain maliciously or sadistically. The allegations fall far short of that necessary to demonstrate "egregious government conduct in the form of excessive and brutal use of physical force." *White,* 901 F.2d at 1507.

Plaintiff's Fourteenth Amendment excessive force claims are dismissed for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2) & 1915A(b).

### D.    Equal Protection Claims

Plaintiff further claims that he was denied Equal Protection in violation of his constitutional rights, but it is not clear upon which factual allegations Plaintiff bases this claim. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.* 473 U.S. 432, 439 (1985). In order to state a claim under § 1983 alleging violations of the equal protection clause of the Fourteenth Amendment, Plaintiff must allege facts which demonstrate that he is a member of a protected class. *See Harris v. McRae,* 448 U.S. 297, 323 (1980) (indigents); *see also Cleburne Living Ctr.,* 473 U.S. at 440-41 (listing suspect classes). In this matter, Plaintiff has neither sufficiently plead that he is a member of a suspect class nor has he plead adequate facts to demonstrate that Defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *See Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied,* 525 U.S. 1154 (1999).

---

and therefore, "the same standards apply." *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998); *but cf. Gibson v. County of Washoe,* 290 F.3d 1175, 1188 n.10 (9th Cir. 2002) (noting that while the Court generally looks to Eighth Amendment cases when reviewing conditions of confinement claims raised by pretrial detainees under the Fourteenth Amendment, "[i]t is quite possible . . . that the protections provided pretrial detainees by the Fourteenth Amendment in some instances exceed those provided convicted prisoners by the Eighth Amendment."); *see also Lolli v. County of Orange,* 351 F.3d 410, 419 n.6 (9th Cir. 2003) (quoting *Gibson,* 290 F.3d at 1188 n.10).

-6-

1   Thus, the Court finds that Plaintiff's allegations are insufficient to prove invidious
2   discriminatory intent. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265
3   (1977). Plaintiff's Fourteenth Amendment equal protection claims are dismissed for failing to
4   state a claim upon which § 1983 relief can be granted.

5   **E.    Medical Care Claims**

6   Plaintiff claims that Defendants violated his constitutional rights when they refused to
7   provide him with medical care for his wrist. (*See* SAC at 12.) As stated above, during the time
8   stated in Plaintiff's Second Amended Complaint he was a pre-trial detainee. The Ninth Circuit
9   has held that "an official's deliberate indifference to a substantial risk of serious harm to an
10  inmate - including the deprivation of a serious medical need - violates the Eighth Amendment,
11  and a fortiori, the Fourteenth Amendment." *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir.
12  2010).

13  In order to assert a claim for inadequate medical care, Plaintiff must allege facts which
14  are sufficient to show that each person sued was "deliberately indifferent to his serious medical
15  needs." *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 106
16  (1976). Prison officials must purposefully ignore or fail to respond to Plaintiff's pain or medical
17  needs; neither an inadvertent failure to provide adequate medical care, nor mere negligence or
18  medical malpractice constitutes a constitutional violation. *Estelle*, 429 U.S. at 105-06.

19  Thus, to state a claim, Plaintiff must allege facts sufficient to show both: (1) an
20  objectively "serious" medical need, i.e., one that a reasonable doctor would think worthy of
21  comment, one which significantly affects his daily activities, or one which is chronic and
22  accompanied by substantial pain, *see Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994);
23  and (2) a subjective, and "sufficiently culpable" state of mind on the part of each individual
24  Defendant. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

25  Even if Plaintiff has alleged facts sufficient to establish the existence of a serious medical
26  need, he must also allege that each Defendant's response to his need was deliberately indifferent.
27  *Farmer*, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials
28  deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may

1  be shown by the way in which prison medical officials provide necessary care. *Hutchinson v.*
2  *United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

3      As to the claims that jail officials delayed in seeking medical treatment for Plaintiff's
4  wrist, there are no facts from which the Court can determine whether he has suffered any injury
5  as a result of the Defendants alleged delay in medical treatment. *See Shapley v. Nevada Bd. of*
6  *State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (a prisoner can make "no claim for
7  deliberate medical indifference unless the denial was harmful."). As to the claims that Plaintiff
8  raises following the fall in his cell, these claims sound in negligence which cannot rise to the
9  level of a constitutional violation. Before it can be said that a prisoner's civil rights have been
10  abridged with regard to medical care, however, "the indifference to his medical needs must be
11  substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
12  cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing
13  *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

14      Thus, Plaintiff's Fourteenth Amendment inadequate medical care claims are
15  **DISMISSED** for failing to state a claim upon which relief may be granted.

16      Accordingly, the Court must **DISMISS** Plaintiff's Second Amended Complaint for all
17  the reasons set forth above, but will provide Plaintiff with the opportunity to file a Second
18  Amended Complaint to correct the deficiencies of pleading identified by the Court.

19  **III.**   **CONCLUSION AND ORDER**

20      Good cause appearing therefor, **IT IS HEREBY ORDERED** that:

21      Plaintiff's Second Amended Complaint is **DISMISSED** without prejudice pursuant to
22  28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b) and for failing to exhaust his administrative remedies.
23  However, Plaintiff is **GRANTED** thirty (30) days leave from the date this Order is filed in
24  which to file a Third Amended Complaint which cures all the deficiencies of pleading noted
25  above. Plaintiff's Amended Complaint must be complete in itself without reference to the
26  superseded pleading. *See* S.D. CAL. CIVLR 15.1. Defendants not named and all claims not re-
27  alleged in the Amended Complaint will be considered waived. *See King v. Atiyeh*, 814 F.2d 565,
28  567 (9th Cir. 1987). Further, if Plaintiff's Amended Complaint fails to state a claim upon which

09cv2505 BEN (POR)

1  relief may be granted, it may be dismissed without further leave to amend and may hereafter

2  be counted as a "strike" under 28 U.S.C. § 1915(g). *See McHenry v. Renne*, 84 F.3d 1172, 1177-

3  79 (9th Cir. 1996).

4          The Clerk of Court is directed to mail Plaintiff a court approved form § 1983 Complaint.

5  **IT IS SO ORDERED.**

6  DATED: May // , 2010

7                                              **HON. ROGER T. BENITEZ**
                                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28